┌─────────────────────────────────────────┐
| **NONPRECEDENTIAL DISPOSITION** |
| To be cited only in accordance with Fed. R. App. P. 32.1 |
└─────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 20, 2022
Decided June 6, 2022

*Before*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-3296

| | |
|---|---|
| WINDY CITY LIMOUSINE COMPANY, LLC, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 1:20-cv-04901 |
| CINCINNATI FINANCIAL CORPORATION, *et al.*, | |
| | Andrea R. Wood, |
| *Defendants-Appellees*. | *Judge*. |

## O R D E R

The Windy City Limousine Company owns and operates a private for-hire transportation business in Chicago, Illinois. During the COVID-19 pandemic, Windy City was forced to suspend its operations for a time because its premises were exposed to persons who tested positive for COVID-19. Windy City sought indemnification for its losses under the policy it maintained with various related insurance companies (collectively, "Cincinnati"). The policy covered losses resulting from the suspension of business operations on account of "direct physical loss" to property. Cincinnati denied Windy City's claim, and Windy City sued Cincinnati in Illinois state court. The action

was removed to federal court. Cincinnati filed a Rule 12(b)(6) motion to dismiss, which the district court granted. Windy City has now appealed.

This case is resolved by our decisions in *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021), and *East Coast Entm't of Durham, LLC v. Houston Cas. Co. & Am. Claims Mgmt., Inc.*, 31 F.4th 547 (7th Cir. 2022). In those cases, this court considered policies materially indistinguishable from Windy City's. We held that, under Illinois law, "direct physical loss" requires a "physical alteration" to property. See *Sandy Point*, 20 F.4th at 333–34; *East Coast Entm't*, 31 F.4th at 550–51. Because the plaintiffs in those cases could not plead that the COVID-19 virus (or the resulting lockdowns) physically altered property, we affirmed the dismissals of their complaints for failure to state a claim. *Sandy Point*, 20 F.4th at 334–37; *East Coast Entm't*, 31 F.4th at 551. For the same reasons, we affirm the dismissal of Windy City's complaint.

Windy City attempts to distinguish its case from these earlier rulings, but its attempts are unavailing. First, Windy City argues that, unlike the plaintiffs in *Sandy Point*, it pleaded the known, actual presence of the virus on its premises. But we have already held that this is insufficient. See *Sandy Point*, 20 F.4th at 335; *East Coast Entm't*, 31 F.4th at 551. More importantly, the Illinois Appellate Court recently said the same thing. See *ABW Dev., LLC v. Continental Cas. Co.*, No. 1-21-0930, 2022 WL 951388, at *7 (Ill. App. Ct. 1st Dist. March 30, 2022) ("[T]he mere presence of the COVID-19 virus does not constitute physical loss or damage.").

Second, Windy City notes that under *Sandy Point* a party may plead "direct physical loss" by alleging either a "physical alteration" *or*, in rare cases, "an access- or use-deprivation so substantial as to constitute a physical dispossession." *Sandy Point*, 20 F.4th at 337. By alleging that the presence of the virus rendered its business "effectively inoperable," Windy City claims it has pleaded physical dispossession. But we explained in the earlier cases why that is not so. Windy City's intended operations may have been rendered untenable for a time, but its premises were not rendered uninhabitable or unsuitable for all other conceivable uses. See *id.* at 334.

Third, Windy City contends that its status as an "essential" business dictates a different outcome, but it offers no clear explanation as to why. We agree with Cincinnati that this is a distinction without a difference. The virus and lockdown orders do not physically alter "essential" property any more than they alter "non-essential" property.

Finally, Windy City urges us to look to the commercial general liability part of its policy, where the term "property damage" is defined to include the "loss of use of tangible property that is not physically injured." We agree with Cincinnati that "[t]his is an analytically unsound method of interpreting insurance policies." There is a difference between a policy's third-party liability coverage and its property coverage. Windy City cannot simply import contractual language from one policy section to another.

We AFFIRM the judgment of the district court.